**Opinion filed October 31, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00237-CR

_____

## ROBERT DALE HINES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 25861A**

### O P I N I O N

In a three-count indictment, the grand jury indicted Robert Dale Hines for tampering with evidence by concealment, possession of more than one gram of methamphetamine, and evading arrest. TEX. PENAL CODE ANN. § 37.09(c), (d)(1) (West 2016); TEX. HEALTH & SAFETY CODE ANN. § 481.115(a),(c) (West 2017); PENAL § 38.04.

At trial, the State abandoned the third count, and the trial court dismissed it. The jury found Appellant guilty of the first two counts, and upon a plea of true to an

enhancement allegation, the trial court assessed punishment and sentenced Appellant to twenty years' confinement for each conviction. The trial court ordered that the two sentences are to run concurrently.

Appellant raises five issues on appeal. First, Appellant argues that the evidence was insufficient to support the conviction for tampering with evidence. Second, Appellant challenges the sufficiency of the evidence for possession of methamphetamine, more than one gram but less than four grams. Third, Appellant complains that the trial court erroneously denied a for-cause challenge to a veniremember. Fourth, Appellant maintains that an error in the jury charge caused him egregious harm. Fifth, Appellant takes the position that, if we reverse the conviction on only one count, Appellant is entitled to a new punishment hearing. We affirm.

We will first address Appellant's third issue concerning the trial court's denial of his for-cause challenge to veniremember Robert Armstrong.

During voir dire, Appellant's trial counsel questioned the venire panel about whether each person could maintain the presumption of innocence if a defendant chooses not to testify. In response, Armstrong said that he had the tendency to view the decision not to testify as an indication of guilt. Others on the panel similarly acknowledged their difficulty with the Fifth Amendment right against self-incrimination. The trial court then asked whether those panelists could follow the instruction to refrain from holding Appellant's failure to testify against him. Although others indicated that they could not follow the instruction, Armstrong indicated that he could.

After the trial court denied Appellant's challenge, Appellant requested an additional peremptory strike. The trial court also denied that request. Appellant identified an empaneled juror against whom he would have used the additional

strike. Appellant properly preserved this issue for our review. *See Green v. State*, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996).

We review a trial court's ruling on a challenge for cause with considerable deference because the trial court is in the best position to evaluate the demeanor and responses of a prospective juror. *Gardner v. State*, 306 S.W.3d 274, 295–96 (Tex. Crim. App. 2009). We may reverse a trial court's ruling on a challenge for cause only if the trial court clearly abused its discretion. *Id.* at 296. When the answers of the challenged venire member are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision. *Id.* at 295; *In re M.R.*, No. 11-08-00155-CV, 2010 WL 1948286, at *2 (Tex. App.—Eastland May 13, 2010, pet. denied) (mem. op.).

A defendant may raise a for-cause challenge against a veniremember who expresses a bias or prejudice "against the law upon which either the State or the defense is entitled to rely." *Gardner*, 306 S.W.3d at 295. The dispositive question is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out the oath and instructions in accordance with the law. *Id.*; *M.R.*, 2010 WL 1948286, at *2. The proponent of a challenge for cause carries the burden of establishing that the challenge is proper. *Gardner*, 306 S.W.3d at 295. The proponent does not meet this burden until the proponent shows that the veniremember understood the requirements of the law and could not overcome his prejudice well enough to follow the law. *Id.*

Here, after Armstrong acknowledged that he would have drawn an adverse inference from a defendant's decision not to testify, the trial court further explained what the law requires. Because Armstrong did not express any further difficulty with following the law after the trial court gave its instruction, the trial court did not err when it denied Appellant's challenge for cause. *See Capello v. State*, 775 S.W.2d 476, 489 (Tex. App.—Austin 1989, pet. ref'd) (holding no error existed where six

3

veniremembers initially expressed concerns about a defendant's decision not to testify but then expressed no more concern after the court instructed them on the law). We overrule Appellant's third issue.

Next, we address whether the evidence presented at trial was sufficient to convict Appellant of possession of more than one gram but less than four grams of methamphetamine. We hold that the evidence was sufficient.

At the guilt/innocence phase of trial, the State called as witnesses the two police officers who arrested Appellant and the forensic scientist who examined the substance found in the vehicle.

When the police initiated a stop of the vehicle driven by Appellant, he turned a corner, stopped, got out, and walked away. The police asked Appellant to come back to the vehicle, but Appellant denied that he was the driver and kept walking. The police apprehended Appellant and searched him. They initially found marihuana in Appellant's pockets. Then they searched Appellant's vehicle and found more marihuana and over two grams of methamphetamine under the driver's seat. Appellant told the police officers that he was not the owner of the vehicle, but one of the officers testified that he saw Appellant driving the vehicle and that no one else was inside it.

The officers arrested Appellant, placed him in the backseat of the patrol car, and took him to jail. At the jail, the police collected about 0.21 grams of methamphetamine from the back seat of the patrol car. A video recording from a camera focused on the backseat showed Appellant putting his left hand into his pocket and moving around the backseat. The police inspected and photographed Appellant's hands and saw a white substance on Appellant's knuckles and in his cuticles. One officer testified that he thought the substance from the backseat could be either methamphetamine or a drug called "bath salts."

4

The State's forensic scientist testified that she was certain that both the substance from Appellant's vehicle and the substance from the backseat of the patrol car contained methamphetamine. She could not determine that the substances were identical, but as Appellant appropriately concedes on appeal, "we have pictures of meth scattered around the backseat, as well as an emptied baggie."

Appellant argues that the evidence is insufficient because "there are inadequate affirmative links between [him] and the methamphetamine." To support his argument, Appellant points to the fact that the methamphetamine was hidden under a seat in a vehicle owned by someone else, and he argues that there was a "lack of physical evidence."

We review the sufficiency of the evidence, whether denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In cases involving unlawful possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the substance and that the accused knew that the matter possessed was contraband. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988). When the accused does not have exclusive possession of the place where the contraband was found, the evidence must link the accused to the contraband and establish that the accused's connection with the contraband was more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex.

Crim. App. 2006); *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. [Panel Op.] 1981).

We consider several nonexclusive factors when determining whether there are links between the accused and the controlled substance: (1) the accused's presence when the search was executed; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused was under the influence of a controlled substance when he was arrested; (5) whether the accused possessed other contraband when he was arrested; (6) whether the accused made incriminating statements; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12.

Here, viewing the evidence in a light most favorable to the verdict, the majority of the factors weigh in favor of the State. The police saw only Appellant in the vehicle and searched it after making the arrest. Appellant's individual proximity to the contraband at the time of the arrest makes it at least somewhat likely that Appellant, instead of a third person, possessed the methamphetamine. Although the contraband was not in plain view, it was under the driver's seat where Appellant sat—within close proximity. The police found marihuana in Appellant's pocket and methamphetamine in the backseat of the patrol car where Appellant sat on the way to the jail. Appellant's possession of multiple controlled substances, including a smaller amount of methamphetamine, indicates he likely had the criminal intent to possess the larger amount of methamphetamine found under the driver's seat of the

vehicle that he drove. Although Appellant did not own the vehicle, viewing the evidence in the light most favorable to the verdict, the fact that Appellant's girlfriend allowed him to drive the car supports the inference that he was in control of the contents of the vehicle. Appellant physically distanced himself from the vehicle and denied he was the driver. While he was in the backseat of the patrol car, Appellant furtively gestured with his hands as he discarded methamphetamine. *See Blanton v. State*, No. 05-05-01060-CR, 2006 WL 2036615, at *2 (Tex. App.—Dallas July 21, 2006, pet. ref'd) (not designated for publication) (reasoning that, "from his discarding the bag containing cocaine, the jury could also infer consciousness of guilt and thus knowledge"). Appellant's words and actions evinced a consciousness of guilt.

Given the overwhelming weight of the factors favoring the verdict, we hold that the evidence was sufficient to affirmatively link Appellant to the methamphetamine. We overrule Appellant's second issue.

Last, we address Appellant's first, fourth, and fifth issues. In his first issue, Appellant asks us to review whether the evidence was sufficient to convict Appellant for tampering with evidence by concealing methamphetamine. We again review the sufficiency of the evidence under the *Jackson* standard. *Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638.

The State introduced into evidence the entire video of him in the backseat of the patrol car. The video showed that the police buckled Appellant into a three-point seatbelt in the backseat with his hands cuffed behind his back. Despite these restraints, Appellant maneuvered his hands to his back pockets a few times. With his hands behind his back, Appellant stretched his body and moved himself around the backseat. Although the video does not show exactly what Appellant had in his hands, photographs showed an empty baggie and methamphetamine scattered on the backseat.

Under Section 37.09 of the Texas Penal Code, a person commits the offense of tampering with evidence when that person, "knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence." PENAL § 37.09(d)(1). This statute requires proof of three elements: the defendant (1) knew about an offense; (2) concealed, altered, or destroyed a thing; and (3) intended to impair the use of that thing as evidence. *Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008); *Ramirez v. State*, No. 11-11-00077-CR, 2013 WL 600270, at *3 (Tex. App.—Eastland Feb. 17, 2013, pet. ref'd) (mem. op., not designated for publication).

Appellant's challenge implicates the second element. Appellant concedes that "[e]vidence of at least attempted destruction or alteration is strong," so there is no dispute about the sufficiency of the evidence to prove Appellant's knowledge or intent. Appellant argues that the indictment only mentioned that Appellant concealed evidence and, therefore, precludes a conviction grounded upon the statutory variances of altering or destroying the evidence. We agree with this much. "[T]he sufficiency of the evidence is measured by the specific alternative elements that the State has alleged in the indictment." *Cada v. State*, 334 S.W.3d 766, 773–74 (Tex. Crim. App. 2011); *see Rabb v. State*, 434 S.W.3d 613, 618–19 (Tex. Crim. App. 2014) (Cochran, J., concurring) ("[T]he State lost this conviction because it did not pay sufficient attention to its pleading. . . . [T]here is . . . a difference between 'concealing,' 'altering,' and 'destroying' evidence. . . . And that is why a prosecutor might allege all three criminal acts in its indictment.").

Appellant argues that, if we consider only whether Appellant concealed methamphetamine, the evidence is insufficient because no evidence showed that Appellant "did anything other than expose that which was initially hidden on his person and attempt to alter or destroy it." We disagree with Appellant's characterization of the evidence.

To determine whether Appellant's conduct fit the statutory term "conceal," we interpret the statute based on its plain meaning. *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008). "In the absence of statutory definitions, 'we turn to the common, ordinary meaning of that word.'" *Id.* (quoting *Olivas v. State*, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006)). Merriam-Webster's Collegiate Dictionary provides two definitions for "conceal": (1) "to prevent disclosure or recognition of" and (2) "to place out of sight." *Conceal*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2004). Under the first definition, invisibility is not a prerequisite. A thing can be concealed merely by making it unrecognizable or unnoticeable. Under either definition, however, a dispositive inquiry is whether law enforcement noticed the object before the defendant tried to hide it and maintained visual contact. *See Stuart v. State*, No. 03-15-00536-CR, 2017 WL 2536863, at *4 (Tex. App.—Austin June 7, 2017, no pet.) (mem. op., not designated for publication); *Gaitan v. State*, 393 S.W.3d 400, 401–02 (Tex. App.—Amarillo 2012, pet. ref'd).

For example, in *Stuart*, the defendant placed knives under a box in a cluttered bedroom. *Stuart*, 2017 WL 2536863, at *3. Because the "police were unable to see the knives until they lifted the box covering them," the knives were hidden from sight or recognition. *Id.* Thus, because law enforcement did not notice the knives before the defendant hid them, the evidence was sufficient to prove the defendant concealed the knives. *Id.* at *4.

In *Gaitan*, the police saw the defendant discard a metal object "into the night"; other people at the scene of the investigation "impeded the officer's search for the discarded item"; and the defendant "told the officers that he was merely throwing away a beer can." *Gaitan*, 393 S.W.3d at 401. The police eventually found the object, which turned out to be a gun. *Id.* Because law enforcement did not maintain visual contact with the gun and had to search for it after the defendant threw it away,

9

a rational juror could have inferred that the defendant temporarily concealed the gun. *See id.* at 402.

By contrast, in *Blanton*, the evidence was insufficient to prove tampering by concealment. *Blanton*, 2006 WL 2036615, at *2. The defendant threw a bag containing cocaine from his car window. *Id.* Because this action only exposed the cocaine to the officer's view, instead of hiding it, the evidence did not show that the defendant concealed anything. *See id.*

In this case, the evidence was sufficient to prove concealment because it showed that Appellant scattered the methamphetamine underneath his body in the backseat of the patrol car and that the police did not notice it until after he got out at the jail. Unlike *Blanton*, the arresting officers did not immediately recognize or see the methamphetamine discarded by Appellant. Instead, it remained hidden underneath his body until he got out of the backseat. The sequence of events is similar to *Stuart* because the police did not find the methamphetamine underneath him on the seat until they removed him from the patrol car. Therefore, Appellant's conduct fit the definition of "conceal" because his affirmative act hid the methamphetamine from view before the police noticed it.

Even if we assume that Appellant's image on the video counted for the purpose of whether the police noticed the methamphetamine, the recording did not clearly show the substance throughout Appellant's ride to the jail. As in *Gaitan*, where the defendant temporarily hid evidence by throwing it into the night so that the police had to look for it, Appellant at least temporarily hid the methamphetamine by scattering it under his body in the backseat, where it remained hidden from the view of the arresting officers and the camera lens during the ride to the jail. Therefore, viewing the evidence in a light favorable to the verdict, we conclude that the evidence was sufficient to prove that Appellant tampered with evidence.

Appellant contends that mandatory precedent forecloses the conclusion that we have reached. Appellant cites *Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014), in which the Court of Criminal Appeals reviewed whether the evidence was sufficient for an appellate court to reform a judgment to "attempted tampering with evidence." *Thornton*, 425 S.W.3d at 292.

The *Thornton* court analyzed whether the defendant had the specific intent necessary to reform the judgment and noted that "not every act of discarding an object evinces an intent to impair the availability of that object as evidence in a later investigation or proceeding." *Id.* at 304. The "most inculpating inference the evidence would support" in some cases may be "that the accused simply intended to dispossess himself of the object in order to more plausibly disclaim any connection to it." *Id.* The court further explained in a footnote that it did not disagree that "evidence of a person throwing down contraband during a police pursuit or detention is [in]sufficient, *by itself*, to constitute either concealment or attempted concealment[.]" *Id.* at 304 n.77 (quoting *id.* at 314 (Cochran, J., dissenting)) (alterations in original). On the facts before it, however, the court held that evidence of the defendant stealthily abandoning a small, translucent pipe on a sidewalk in a dimly lit area was sufficient to prove attempted concealment. *Id.* at 304–06.

Appellant argues that *Thornton* endorsed the reasoning in *Hollingsworth v. State*, 15 S.W.3d 586 (Tex. App.—Austin 2000, no pet.), and conflicts with our holdings in *Collier v. State*, 254 S.W.3d 576, (Tex. App.—Eastland 2008), *pet. dism'd, improvidently granted*, 284 S.W.3d 866 (Tex. Crim. App. 2009), and *Evanoff v. State*, No. 11-09-00317-CR, 2011 WL 1431520 (Tex. App.—Eastland Apr. 14, 2011, pet. ref'd) (mem. op., not designated for publication).

In *Collier*, we declined to follow *Hollingsworth*, in which the Austin court had held that evidence of a defendant evading the police with cocaine in his mouth was insufficient to prove concealment because cocaine is commonly carried that

way. *Collier*, 254 S.W.3d at 578; *Hollingsworth*, 15 S.W.3d at 590. On similar facts in *Collier*, we held that this evidence was sufficient to prove concealment because a reasonable jury could infer from a defendant's surreptitious behavior that the contraband was carried in the mouth to conceal it from police. *Collier*, 254 S.W.3d at 578; *see Evanoff*, 2011 WL 1431520, at *4–5 (noting disagreement with *Hollingsworth* but holding that, "even under *Hollingsworth*," the evidence was sufficient to prove concealment where the defendant removed contraband from the officer's sight by fleeing from arrest).

We do not find our decisions in *Collier*, *Evanoff*, or this case to be in conflict with *Thornton*. To the extent that *Hollingsworth* conflicts with our holding in this case, we decline to follow it. Appellant scattered methamphetamine underneath his body in the backseat of the police car to prevent the police from finding it during the inevitable search at the jail. As in *Thornton*, "we perceive the evidence in this case to show *more* than a mere 'throwing down [of] contraband,' so that that act does not stand 'by itself.'" *Thornton*, 425 S.W.3d at 305 n.77 (alteration in original).

Because we find the evidence sufficient to support the tampering conviction, we do not address whether reformation to attempted tampering would be appropriate. We overrule Appellant's first issue.

Reviewing Appellant's fourth issue, we consider whether the trial court's jury charge was erroneous. In the indictment, the State specifically alleged that Appellant "intentionally and knowingly conceal[ed] a tangible thing, to-wit: METHAMPHETAMINE," omitting any allegations that Appellant might have "altered" or "destroyed" evidence. At trial, after the State's case-in-chief, the trial court ordered a recess until the next day, informing the jurors that the lawyers would work on the charge. The next day, the trial court submitted the jury charge to the parties on the record, and Appellant's trial counsel replied, "No objections, Your

12

Honor." In both the abstract and application paragraphs, the charge included all three means of violating the statute: "alter, destroy[,] or conceal."

We review a jury charge issue under a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). We first determine whether an error exists. *Id.* Then, if we find error, we analyze that error for harm. *Id.* If Appellant fails to object to the charge, as here, we will reverse only if the record shows "egregious harm" to Appellant. *Id.* at 743–44. Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the accused of a 'valuable right,'" or "vitally affect [a] defensive theory." *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985).

On the first step of the *Almanza* test, Appellant argues that the jury charge was erroneous because it, "viewed as a whole, authorize[d] the jury to find [Appellant] guilty of tampering based on three theories when only one, concealment, [was] allowed by the indictment." A correct jury charge "is authorized by the indictment." *Cada*, 334 S.W.3d at 773 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Although "conceal," "destroy," and "alter" have some overlap in meaning, "the words chosen by the Legislature in defining this offense each have a distinct purpose." *See Rabb*, 434 S.W.3d at 617. By including the words "alter" and "destroy," the jury charge erroneously added theories of criminal liability that were not authorized by the indictment. We therefore agree that error existed.

On the second step of the *Almanza* analysis, Appellant argues that the evidence of concealment was insufficient and that the State emphasized alteration and destruction during closing arguments. In response, the State argues that the evidence presented at trial and the closing argument focused on only one question: "whether [the methamphetamine] was . . . placed there by the officers, or whether appellant put it there with the intent of concealing it so it would not be found in his

13

pocket at the jail." We agree with the State that the error did not cause egregious harm.

To determine whether harm was egregious under *Almanza*, we consider four factors on a case-by-case basis: (1) the jury charge, (2) the state of the evidence, (3) the parties' arguments, and (4) other relevant information in the record. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). Harm is egregious only if the balance of the factors tends to show that the error caused "actual rather than theoretical harm." *Id.* (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

The first factor weighs in favor of finding egregious harm. The jury charge failed to track the language of the indictment in the application paragraph. The application paragraph "is the 'heart and soul' of the jury charge." *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012) (quoting *Gray v. State*, 152 S.W.3d 125, 128 (Tex. Crim. App. 2004)). The error in the application paragraph taints the entire jury charge and weighs in favor of finding egregious harm.

The second factor weighs heavily against finding egregious harm. The testimony of the officers and the video evidence showed that Appellant effectively hid the methamphetamine from view of the police by scattering it in the backseat of the patrol car underneath his body. This supports the inference that Appellant hoped that the evidence would remain hidden from the police at the jail. The arresting officers did not see the methamphetamine until they removed Appellant from the backseat of the patrol car at the jail. The video showed Appellant digging in his pockets and moving around the backseat, but the methamphetamine was not visible on the video. And Appellant scattered the methamphetamine underneath his body. The fact that Appellant disbursed the methamphetamine into smaller portions under his body creates a strong inference that Appellant intended to make the methamphetamine less visible. Therefore, the probative value of the evidence

14

focused primarily upon the authorized theory of concealment and weighs heavily against finding egregious harm.

The third factor weighs only slightly in favor of egregious harm. The arguments of the parties created some potential that the jury could have considered an unauthorized theory of liability. Appellant's trial counsel read the jury charge and defended against all three theories during closing argument. The State concedes that the prosecution mentioned alteration as a potential theory of the case during voir dire. The prosecutor also repeated the erroneous jury charge during closing arguments. In characterizing Appellant's conduct in the backseat of the patrol car, the prosecutor said, "If you watch the video, he really moves all over that seat. I'm amazed it stayed in any portion. I'm amazed that you've got anything left that stayed in the seat as much as [Appellant] is moving." The dictionary definition of "alter," used as a transitive verb as it is in the statute, is "to make different without changing into something else." *Alter*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2004). Based on the ordinary meaning of "alter" and the prosecutor's closing argument, a rational juror could potentially infer that Appellant altered the methamphetamine by changing the portion of the substance remaining in the seat.

However, the thrust of the prosecutor's closing argument focused on the authorized theory of concealment. In summarizing the argument, for example, the prosecutor said, "This is a situation where you decide where [the evidence] came from. Police officers put it in the backseat, picked out [Appellant] and decided to pick on him, or the man was trying to dump it so that it couldn't be used against him before you 12." Similarly, Appellant's trial counsel implied in his closing argument that the police could have planted the methamphetamine on Appellant by pointing out that the police placed their hands inside Appellant's pockets during the search and that the video did not record the search. This is the defensive theory that the

State primarily contested during closing arguments, focusing on whether Appellant "dumped" the methamphetamine.

Considering the arguments of the parties as a whole, therefore, the defensive theories addressing the unauthorized statutory alternative were more incidental to the State's case. When the error relates to an incidental defensive theory rather than an obviously contested issue, the harm is less likely to be egregious. *See Hutch v. State*, 922 S.W.2d 166, 172–73 (Tex. Crim. App. 1996), *overruled on other grounds by Gelinas v. State*, 398 S.W.3d 703, 708 (Tex. Crim. App. 2013). Because the prosecution's argument focused on whether Appellant hid the evidence, the unauthorized theories were incidental and less likely to cause actual harm to Appellant. Therefore, although the parties' closing arguments created the potential for harm, we impute less weight to this factor because the effect was incidental.

The fourth factor weighs against finding egregious harm. Appellant did not object to a jury charge that simply followed the pattern of the statute, and the prosecution's argument focused on the theory that Appellant "dumped" the methamphetamine, which fits the authorized theory of concealment. Therefore, the context of the record indicates that the error was likely deemphasized to the jury and reduces the likelihood that actual harm befell Appellant.

On balance, the two factors weighing against egregious harm are heavier than the two factors on the other side of the scale. Overall, the probative weight of the evidence strongly supported the prosecution's primary theory, which was authorized by the indictment and emphasized at trial. The jury was not likely distracted or divided over the unauthorized theories. Although a possibility of harm existed, the balance of the factors shows that the potential for harm likely remained in the realm of theoretical, rather than actual, harm. We overrule Appellant's fourth issue.

16

In his fifth issue, Appellant requests a new punishment hearing contingent upon the reversal of his conviction on at least one count.  Because we have overruled all of Appellant's other issues, we do not address the fifth issue.

We affirm the judgments of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

October 31, 2017

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

17