

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00269-CR

**D'WARREN LAMAR SIMMONS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2015-1825-C1

# OPINION

In three issues, appellant, D'Warren Lamar Simmons, challenges his conviction for

assault family violence with a prior conviction for assault family violence. *See* TEX. PENAL

CODE ANN. § 22.01(a)(1), (b)(2)(A). (West 2019). Specifically, Simmons contends that: (1)

the trial court abused its discretion by excluding recorded statements made by the

complainant, Selsa Herrera; (2) the trial court failed to properly instruct the jury

regarding the charged offense; and (3) the court cost imposed for the time-payment fee is unconstitutional. We affirm as modified.

## I. HERRERA'S RECORDED STATEMENTS

In his first issue, Simmons argues that the trial court abused its discretion by excluding recorded statements Herrera gave to the District Attorney's office in which she admitted to lying to the police and stating that someone other than Simmons actually assaulted her. Simmons asserts that the statements should have been admitted because they are against Herrera's penal interest and exposed her to criminal liability for making a false police report, and because the statements were sufficiently corroborated. We disagree.

### A. Standard of Review

A trial court is given broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). As such, we review a trial court's admission or exclusion of evidence under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A reviewing court should not reverse a trial court's ruling on the admissibility of evidence that falls within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

### B. Discussion

At trial, Simmons proffered Herrera's recorded statements under the statement-against-interest exception to the hearsay rule outlined in Texas Rule of Evidence 803(24), which defines a statement against interest as,

A statement that:

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Tex. R. Evid. 803(24).

Much of the arguments at trial and on appeal center on subsection (B) of Rule 803(24)—the corroboration requirement.[1] Simmons admits in his brief that he offered no independent evidence to corroborate Herrera's recorded statements. However, Simmons contends that the circumstances surrounding the statements render the statements self-corroborating.

The Court of Criminal Appeals has listed a number of factors that are relevant when considering the trustworthiness of an inculpatory statement made by a declarant, including,

---

[1] It is undisputed on appeal that the recorded statements made by Herrera are self-inculpatory.

> (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant; (2) whether the declarant was so situated that he might have committed the crime; (3) the timing of the declaration; (4) the spontaneity of the declaration; (5) the relationship between the declarant and the party to whom the statement was made; and (6) the existence of independent corroborative facts.

*Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004).

Herrera testified that the statements made in the recording were false and that her boyfriend, Simmons, came up with the story and encouraged her to tell the District Attorney's office that her injuries were caused by a fight with other girls. As an impetus for the fight, the story continued that Simmons had cheated on Herrera with these girls. Herrera further noted that she and Simmons "practiced it and practiced it" prior to making the recorded statements. The record reflected that the assault occurred on May 28, 2015, yet Herrera made the recorded statements approximately a year later in April and June 2016. As for the reason she made the recorded statements, Herrera explained that she did not want to get Simmons in trouble and that she was willing to go to jail for filing a false report because she "thought he loved [her]."

The record included an eyewitness, Bobbie Barrett, who observed and described the May 28, 2015 assault of Herrera by Simmons. This testimony contradicts the statements made in the recording and undermines their veracity. Furthermore, Barrett recounted Herrera's fresh injuries, including fresh blood and scratches, which also contradicts Herrera's recorded statements that the injuries were sustained earlier in the day from a fight with the above-mentioned girls.

Based on the foregoing testimony, and because Simmons does not cite to authority holding that recorded statements similar to those made by Herrera are self-corroborating, and because Simmons did not proffer independent, corroborating evidence, we cannot say that the record contains sufficient corroborating circumstances to indicate the trustworthiness of Herrera's recorded statements. *See id.* at 113; *see also Cunningham v. State*, 877 S.W.2d 310, 312 (Tex. Crim. App. 1994) (noting that a statement against penal interest may be corroborated by "proof that the statement was against the declarant's interest to an unusual or devastating degree, that the declarant repeated his story often and consistently, or that he could not have been motivated to falsify for the benefit of the accused"). As such, we cannot conclude that the trial court abused its discretion by excluding the recorded statements. *See* TEX. R. EVID. 803(24); *see also Martinez*, 327 S.W.3d at 736; *Montgomery*, 810 S.W.2d at 391.

In any event, even if we were to conclude that Simmons sufficiently corroborated Herrera's recorded statements, the failure of the trial court to admit the evidence was harmless. *See* TEX. R. APP. P. 44.2(b). This is because the substance of the recorded statements was admitted elsewhere in the trial without objection. *Cf. Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (holding that any error in the admission of evidence is cured when the same evidence is admitted elsewhere without objection); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (same). In fact, the State

and defense counsel spent a significant amount of time questioning Herrera about the veracity, content, and circumstances surrounding the making of the recorded statements.

And to the extent that it can be argued that the recorded statements should have been admitted for impeachment purposes, we note that Herrera did not deny making the recorded statements and admitted to the content of the statements. Thus, the recorded statements were not admissible under Texas Rule of Evidence 613(a)(4). *See* TEX. R. EVID. 613(a)(4) ("Extrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement."). We overrule Simmons's first issue.

## II.  THE JURY CHARGE

In his second issue, Simmons complains about errors in the jury charge. In particular, he argues that: (1) the abstract portion of the charge only instructed the jury regarding assault against a family member or household member and not the commission of such an offense against a person with whom the defendant has a dating relationship; (2) the abstract portion of the charge failed to provide statutory definitions for family and household, and the charge did not provide a complete statutory definition for dating relationship; and (3) the application paragraph omitted two of the three types of relationships alleged in the indictment—namely, family or household member. In its brief, the State concedes, and we agree, that the charge contains error. The State contends that the error was not egregiously harmful to Simmons.

## A. Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, as was the case here, a reversal will be granted only if the error present egregious harm. *Id.* To obtain a reversal for jury-charge error, Simmons must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Because Simmons did not object to the charge in the trial court, we must analyze any error for egregious harm. In doing so, we consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the final arguments of the parties; and (4) any other relevant information revealed by the trial court as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v.*

*State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**B.     Discussion**

**1.  The Entire Jury Charge**

In the instant case, Simmons was charged with assault family violence under section 22.01(a)(1), which was enhanced by Simmons's prior conviction for assault family violence under section 22.01(b)(2)(A).[2] *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A). Section 22.01(a)(1) of the Penal Code provides that a person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." *Id.* § 22.01(a)(1). An offense under subsection (a)(1) may be enhanced from a Class A misdemeanor to a third-degree felony if the offense is committed against,

> a person whose relationship to or association with the defendant is
> described by Section 71.0021(b), 71.003, or 71.005 of the Family Code,[3] if:

---

[2] The indictment provided that Simmons "intentionally, knowingly, and recklessly cause[d] bodily injury to SELSA HERRERA, a member of the Defendant's family or a member of the Defendant's household or a person with whom the Defendant has or has had a dating relationship, as described by Section 71.003 or 71.005 or 71.0021(b) of the Texas Family Code . . . ."

[3] Under section 71.0021(b) of the Family Code, a "dating relationship" is "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b) (West 2019). Section 71.0021(b) then provides more precise parameters for defining a dating relationship. *Id.* § 71.0021(b)(1)-(3). Section 71.003 of the Family Code defines "[f]amily" as "individuals related by consanguinity or affinity, as determined under Sections 573.022 and 573.024, Government Code." *Id.* § 71.003 (West 2019). And finally, under section 71.005 of the Family Code a "[h]ousehold" is "a unit composed of persons living together in the same dwelling without regard to whether they are related to each other." *Id.* § 71.005 (West 2019).

(A) it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005 of the Family Code.

*Id.* § 22.01(b)(2)(A).[4]

Simmons's complaint with regard to the application portion of the charge is that the trial court failed to instruct the jury on two of the three types of relationships alleged in the indictment—family or household member. *See* TEX. FAM. CODE ANN. §§ 71.003, 71.005 (West 2019).

In the application portion of the charge, the trial court narrowed the scope of the individuals to which the assaultive conduct was directed to that of someone in a dating relationship with Simmons, as defined in section 71.0021(b). The application portion of the charge did not reference the other two types of relationships alleged in the indictment under sections 71.003 and 71.005 of the Family Code. In other words, the charge did not track the language of the indictment or the operative statute. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A).

Nevertheless, the State contends that the failure to reference the other two types of relationships alleged in the indictment is not egregiously harmful because the record did not contain any evidence demonstrating that Herrera and Simmons lived together or

---

[4] Simmons stipulated that the enhancement under section 22.01(b)(2)(A) of the Penal Code was "true." *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West 2019).

that they are family members. We agree. The record contains no evidence that Herrera and Simmons are family members or that they lived together. Rather, the record only reflects that they were in a dating relationship. We therefore cannot conclude that this factor weighs in favor of a finding of egregious harm.

### 2. The State of the Evidence and Counsel's Arguments

"One of [the] considerations in the determination of egregious harm is whether the error related to a contested issue." *Hutch*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996) (quotations omitted). "When the error relates to an incidental defensive theory rather than an obviously contested issue, the harm is less likely to be egregious." *Hines v. State*, 535 S.W.3d 102, 114 (Tex. App.—Eastland 2017, pet. ref'd).

Again, as noted earlier, it was undisputed that Herrera and Simmons were in a dating relationship. Both Herrera and her mother, Nellie Rodriguez, documented the dating relationship between Simmons and Herrera, including when and where the couple met and the number of times the couple went to church, went on dates, and were together at each other's house.

Furthermore, in its closing argument, the State mentioned the definition of "dating relationship" and recounted that Herrera and Rodriguez established that Simmons and Herrera "were boyfriend and girlfriend." The crux of Simmons's closing argument was that Herrera was lying and that eyewitness Bobbie Barrett was creating memories from what Herrera told her, rather than what she saw. Simmons's counsel also argued that

the police did not do a thorough investigation. At no point during the trial did Simmons's counsel challenge the evidence or element of a dating relationship. Given the foregoing, we find that these factors weigh against a finding of egregious harm. *See Gelinas*, 398 S.W.3d at 710; *see also Allen*, 253 S.W.3d at 264.

### 3. Other Relevant Information

Other than mentioning that the failure to include in the application paragraph two of the three statutorily-defined relationships alleged in the indictment amounted a comment on the evidence by the trial court, a contention we addressed in the factor pertaining to the entire jury charge, we have not independently found, and Simmons does not direct us to any, other relevant information that weighs in favor of a finding of egregious harm. As such, we cannot say that this factor weighs in favor of a finding of egregious harm. *See Gelinas*, 398 S.W.3d at 710; *see also Allen*, 253 S.W.3d at 264.

### 4. Conclusion

Despite the numerous errors in the charge, we cannot say that the errors affected the very basis of the case, vitally affected Simmons's defensive theory, or deprived Simmons of a valuable right. *See Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121. While we are troubled that the charge did not completely track the indictment or the operative statute, the fact remains that the errors complained about in this issue pertain to the relationship between Herrera and Simmons—an element that was not contested at trial. *See Hutch*, 922 S.W.2d at 172; *see also Hines*, 535 S.W.3d at 114. As mentioned earlier,

the focus of Simmons's defense at trial was that Herrera is a convicted and admitted liar and that she convinced Barrett to participate in the lies. We therefore cannot say that Simmons was egregiously harmed by the charge in this case. *See Almanza*, 686 S.W.2d at 171; *see also Sanchez*, 376 S.W.3d at 775; *Arline*, 721 S.W.2d at 352. We overrule his second issue.

### III.    THE TIME-PAYMENT FEE

In his third issue, Simmons contends that the court cost imposed for a time-payment fee under section 133.103(b) and (d) of the Local Government Code is unconstitutional. As such, Simmons requests that we modify the judgments by deleting $22.50 of the court costs assessed.

Simmons did not object to the imposition of court costs in the trial court. The cost bills were generated the same day as the judgment on August 2, 2018, but are not clearly incorporated into the judgment. The judgment includes a blank for "court costs," which states "SEE BELOW." The judgment also includes a section entitled, "Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part hereof." The box next to this section in each judgment is not checked.

Convicted defendants may object to the assessment of mandatory court costs against them for the first time on appeal when the judgment does not contain an itemization of the imposed court costs. *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016); *see Bowden v. State*, 502 S.W.3d 913, 914 (Tex. App.—Houston [14th Dist.] 2016,

pet. ref'd). Because the section 133.103 time-payment fees is a mandatory court cost imposed upon conviction for a felony or misdemeanor, and because the judgment in this case does not contain an itemization of the imposed court costs, we conclude that preservation of this complaint was not required. *See* TEX. LOCAL GOV'T CODE ANN. § 133.103(a) (providing that "[a] person convicted of an offense shall pay, in addition to all other costs, a fee of $25 if the person . . . has been convicted of a felony or misdemeanor; and . . . pays any part of a fine, court costs, or restitution on or after the 31st day after the date on which a judgment is entered assessing the fine, court costs, or restitution"); *London*, 490 S.W.3d at 507; *Bowden*, 502 S.W.3d at 914. We now analyze the constitutionality of the statute.

We review the constitutionality of a criminal statute de novo as a question of law. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it. *See Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *see also State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979). Moreover "[a] reviewing court must make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown." *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015) (internal citations omitted). The burden of

establishing the unconstitutionality of a statute falls on the party seeking to challenge the statute. *Rosseau*, 396 S.W.3d at 557.

In the instant case, Simmons makes a facial challenge to the constitutionality of section 133.103(b) and (d) of the Local Government Code. A facial challenge is an attack on a statute itself, as opposed to a particular application. *Peraza*, 467 S.W.3d at 514. As such, the challenger must establish that "no set of circumstances exists under which the statute would be valid." *Id.*; *see Rosseau*, 396 S.W.3d at 557 (holding that a party asserting a facial challenge "must establish that the statute always operates unconstitutionally in all possible circumstances"). "A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

When analyzing a facial challenge to court costs, we consider only applications of the statute that it authorizes or prohibits. *See Peraza*, 467 S.W.3d at 515. We do not theorize where funds collected and distributed might be spent when evaluating the facial constitutionality of a court cost. *See id.*

Section 133.103 of the Local Government Code contains provisions for the time-payment fee. *See* TEX. LOCAL GOV'T CODE ANN. § 133.103. As mentioned above, a person convicted of a felony or misdemeanor shall pay, in addition to all other costs, a $25 fee if the person pays "any part of a fine, court costs, or restitution on or after the 31st day after

the date on which the judgment is entered assessing the fine, court costs, or restitution." *Id.* § 133.103(a). The statute directs the treasurer to allocate the fees collected in the following three ways: (1) send fifty percent of the fees collected to the comptroller, who shall then deposit the fees to the credit of the general revenue fund; (2) deposit ten percent of the fees in the general fund of the county or municipality "for the purpose of improving the efficiency of the administration of justice in the county or municipality; and (3) deposit forty percent of the fees in the general revenue account of the county or municipality. *Id.* § 133.103(b)-(d).

Simmons does not contest the percentage of the $25 time-payment fee that is directed to the general fund of the county or municipality "for the purpose of improving the efficiency of the administration of justice in the county or municipality." *Id.* § 133.103(c). Rather, he challenges the remaining ninety percent of collected fees, which are directed by subsections (b) and (d) to general funds that do not have a legitimate criminal-justice purpose.

Several Texas courts have recently concluded that sections 133.103(b) and (d) are unconstitutional. *See Johnson v. State*, 573 S.W.3d 328, 340 (Tex. App.—Houston [14th Dist.] 2019, pet. filed); *see also Dulin v. State*, Nos. 03-18-00523-CR & 03-18-00524-CR, 583 S.W.3d 351, 2019 Tex. App. LEXIS 7084, at **4-5 (Tex. App.—Austin Aug. 14, 2019, pet. filed); *Kremplewski v. State*, No. 01-19-00033-CR, ___ S.W.3d ___, 2019 Tex. App. LEXIS 6919, at **5-8 (Tex. App.—Houston [1st Dist.] Aug. 8, 2019, pet. filed); *King v. State*, No.

11-17-00179-CR, 2019 Tex. App. LEXIS 5902, at **13-14 (Tex. App.—Eastland July 11, 2019, pet. filed) (mem. op., not designated for publication). These courts noted that the time-payment fee is simply a late fee that does not reimburse the county or State for expenses incurred in connection with the defendant's criminal trial or criminal resources generally. *See Johnson*, 573 S.W.3d at 340; *see also Dulin*, 2019 Tex. App. LEXIS 7084, at *4; *Kremplewski*, 2019 Tex. App. LEXIS 6919, at **5-7; *King*, 2019 Tex. App. LEXIS 5902, at *13. Additionally, they concluded that subsections (b) and (d) do not direct funds to be used for legitimate criminal-justice purposes; rather, the subsections direct collected funds into a general revenue fund without limitation or restriction. *See Johnson*, 573 S.W.3d at 340; *see also Dulin*, 2019 Tex. App. LEXIS 7084, at *4; *Kremplewski*, 2019 Tex. App. LEXIS 6919, at **5-7; *King*, 2019 Tex. App. LEXIS 5902, at *13. Because the collected funds are sent into a general-revenue fund and are not sufficiently related to the criminal-justice system or a legitimate criminal-justice purpose, these courts concluded that subsections (b) and (d) are unconstitutional. *See Johnson*, 573 S.W.3d at 340; *Salinas v. State*, 523 S.W.3d 103, 109 n.26 (Tex. Crim. App. 2017) ("Because the constitutional infirmity in this case is the statute's failure to direct the funds to be used in a manner that would make it a court cost (i.e., for something that is a criminal justice purpose), the statute operates unconstitutionally every time the fee is collected, making the statute unconstitutional on its face."); *see also Dulin*, 2019 Tex. App. LEXIS 7084, at *4; *Kremplewski*, 2019 Tex. App. LEXIS 6919, at **5-7; *King*, 2019 Tex. App. LEXIS 5902, at *13.

We agree with our coordinate courts and adopt their reasoning herein. Accordingly, we conclude that section 133.103(b) and (d) are facially unconstitutional. Furthermore, our holding does not apply to section 133.103(c), which allocated ten percent of the fee to the general fund of the county or municipality to be expended for the purpose of improving the efficiency of the administration of justice in the county or municipality. *See Johnson*, 573 S.W.3d at 340; *see also Dulin*, 2019 Tex. App. LEXIS 7084, at **4-5; *Kremplewski*, 2019 Tex. App. LEXIS 6919, at **5-8; *King*, 2019 Tex. App. LEXIS 5902, at *14. We therefore sustain Simmons's third issue.

## IV. CONCLUSION

Because we have sustained Simmons's third issue and concluded that ninety percent of the time-payment fee, as prescribed in section 133.103(b) and (d) of the Local Government Code, is facially unconstitutional, we modify the trial court's judgment to change the time-payment fee from $25 to $2.50. We affirm the trial court's judgment as modified.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Neill
Affirmed as modified
Opinion delivered and filed November 27, 2019
Publish
[CR25]

