**Opinion filed March 7, 2024**



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00354-CR

_____

## JOE STARKS, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2**
**Taylor County, Texas**
**Trial Court Cause No. 2-462-21**

## O P I N I O N

The legislature recently codified the offense of mail theft into Section 31.20 of the Penal Code, which addresses the rising rates of "porch piracy,"[1] the scourge

---

[1]*See Porch Pirate*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/search/dictionary/?q=porchpirate (last visited March 6, 2024) ("A person who steals parcels that have been delivered and left unattended outside the intended recipient's home, business, etc."); *see also* Drew McKay, *The Porch Pirate Problem*, 59 HOUSTON L. REV. 455 (2021) (discussing the enactment of Section 31.20).

of e-commerce vendors and patrons everywhere.[2]  *See* TEX. PENAL CODE ANN. § 31.20 (West Supp. 2023).  Appellant, Joe Starks, Jr.,[3] was charged by information for the offense of mail theft by appropriating "mail" from fewer than ten addresses, a Class A misdemeanor.  *Id.* § 31.20(c)(1).  Appellant waived his right to a jury trial and pleaded not guilty to the charged offense.  After a bench trial, the trial court convicted Appellant of the offense and sentenced him to confinement for 365 days in the Taylor County Detention Center.

In a single issue, Appellant challenges the sufficiency of the evidence to support his conviction on the ground that the evidence is insufficient to establish that he stole another person's mail or packages as delivered by a common carrier or delivery service.  He contends that the language and intent of Section 31.20 does not criminalize the theft of mail or other packages that are delivered by the United States Postal Service (USPS), which he alleges is not a common carrier or delivery service under the statute.  We affirm.

I. *Factual Background*

Ricky Holguin, a USPS mail carrier, delivered a package and two envelopes to the home of Latisha Martinez.  In doing so, Holguin placed these items on the step of Martinez's residence and rang the doorbell.  Shortly thereafter, Holguin observed Appellant take those same envelopes and the package from the front porch of Martinez's residence and take them into his residence.  Holguin could see Appellant through the glass screen door of Appellant's residence, and he saw Appellant begin opening the items.  Holguin then called 9-1-1.

---

[2]Section 31.20 became effective on September 1, 2019.

[3]In a separate appeal, we recently affirmed Appellant's conviction and sentence for the second-degree felony offense of possession of methamphetamine.  *See Starks v. State*, No. 11-22-00236-CR, 2024 WL 479370 (Tex. App.—Eastland Feb. 8, 2024, no pet. h.).

Officer Jay Shafer Young of the Abilene Police Department was dispatched to Appellant's residence to investigate this incident. When she arrived, the front door to Appellant's residence was open and Officer Young was able to see the stolen packages inside Appellant's residence through the glass screen door. Martinez testified that she did not give Appellant permission to take her delivered envelopes and packages, and she authenticated security footage that showed Appellant taking them from her front porch.

Appellant testified and denied that he committed the offense, that he was the person shown on the security footage, and that he was the person who was arrested for this offense. In that regard, Appellant further testified that he did not remember the day that the theft was alleged to have occurred and that neither the security footage nor the testimony presented at trial refreshed his recollection.

## II. *Standards of Review*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the

factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Garia*, 667 S.W.3d at 762; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v.*

*State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

When, as here, the sufficiency of the evidence turns on the meaning of a statute, we review the statutory-construction question de novo. *Delarosa v. State*, 677 S.W.3d 668, 674 (Tex. Crim. App. 2023). When we construe a statute, we must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We first examine the literal text of the statute. *McMillian v. State*, 388 S.W.3d 866, 871 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "[W]e read words and phrases in context and construe them according to the rules of grammar and usage." *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011) (quoting *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008)). "We must 'presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.'" *Id.* (quoting *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). "Only if the statutory language is ambiguous, or leads to absurd results that the Legislature could not have possibly intended, may we consult extra-textual sources." *Id.* (citing *Boykin*, 818 S.W.2d at 785). Further, "[i]f the language of the statute is plain, we follow that language unless it leads to absurd results that the legislature could not have possibly intended." *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). A statute is ambiguous in those situations where reasonable, well-informed persons might understand the statute to have two or more different meanings. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015).

### III. *Analysis*

Appellant contends that (1) Section 31.20 only criminalizes the theft of mail and other items that are delivered by a common carrier or delivery service, and

(2) the USPS is not a common carrier or delivery service within the meaning of the statute. He asserts, therefore, that the theft of "mail" as defined in the statute excludes any theft of "mail" that the USPS delivers.

The State responds that the USPS *is* a delivery service. It also points out that, under federal law, a mailbox may only contain United States mail on which postage has been paid. As such, because the statute criminalizes theft of mail "from another person's mailbox," it necessarily criminalizes the theft of United States mail. *See* 18 U.S.C.A. § 1725.

Under Section 31.20, "[a] person commits an offense if the person intentionally appropriates mail from another person's mailbox *or premises* without the effective consent of the addressee and with the intent to deprive that addressee of the mail." PENAL § 31.20(b) (emphasis added). "Mail" is defined as "a *letter*, postal card, *package*, bag, or other sealed article that: (A) is delivered by a common carrier or delivery service and not yet received by the addressee; or (B) has been left to be collected for delivery by a common carrier or delivery service." *Id.* § 31.20(a)(3) (emphasis added). Here, the information charged Appellant with intentionally appropriating packages and envelope bags from Martinez's *premises* without her consent.

A. *The Meaning of Section 31.20*

We first construe the statute based on the plain meaning of the words used. Section 31.20 does not define the term "delivery service." Therefore, we must "turn to the common, ordinary meaning of that [term]." *Hines v. State*, 535 S.W.3d 102, 110 (Tex. App.—Eastland 2017, pet. ref'd) (quoting *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008) (consulting dictionary definitions for the term "conceal" in the absence of a statutory definition)).

6

Merriam-Webster defines "delivery" as "the act or manner of delivering something." *Delivery*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). It defines "deliver" as "to take and hand over to or leave for another." *Deliver*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). The term "service" is defined in many ways—"the work performed by one that serves," "useful labor that does not produce a tangible commodity," such as professional services, or "a facility suppling some public demand." *Service*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). This last example best describes the United States Postal *Service*—the "facility supplying some public demand." The term "service" is also included in its title. Moreover, the public demand being supplied by the USPS is the delivery of mail and other items. *See* 39 U.S.C.A. § 404(a)(1) (Providing that the USPS is empowered to "provide for the collection, handling, transportation, *delivery*, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail.").

We also note that restrictions exist for the use of mailboxes. Section 31.20(b) makes it an offense for a person to appropriate "mail" from another person's mailbox. Additionally, federal law provides that only mailable matter—United States mail—may be placed in a mailbox:

> Whoever knowingly and willfully deposits any mailable matter such as statements of accounts, circulars, sale bills, or other like matter, on which no postage has been paid, in any letter box established, approved, or accepted by the Postal Service for the receipt or delivery of mail matter on any mail route with intent to avoid payment of lawful postage thereon, shall for each such offense be fined under this title.

*See* 18 U.S.C.A. § 1725. The USPS Domestic Mail Manual, which is posted on its website, provides further guidance that reaffirms the exclusivity of mailboxes and United States mail: "[E]very letterbox or other receptacle intended or used for the receipt or delivery of mail . . . is designated an

7

authorized depository for mail within the meaning of 18 U.S.C. . . . 1725," and "the receptacles . . . may be used only for matter bearing postage." United States Postal Serv., Mailing Standards, Domestic Mail Manual 508.3.1.1, 508.3.1.3 (2024), https://pe.usps.com/cpim/ftp/manuals/dmm300/full/mailingStandards.pdf (last visited March 6, 2024).

Considering the foregoing principles and our construction of the text and intent of Section 31.20, we conclude that (1) the USPS is a "delivery service" under Section 31.20, (2) the term "mail" as it is defined and used in Section 31.20 encompasses mail and other items that are delivered to an addressee by the USPS, and (3) Section 31.20 criminalizes the intentional appropriation of mail and other items delivered by the USPS and which are confiscated by a person from another person's premises or mailbox—mailboxes that contain *letters*, cards, *packages*, bags, or other sealed articles that bear postage, that is, United States mail.

Appellant attempts to focus on the definition of "common carrier" as it is used in the statute, and its distinction from the USPS. But Appellant does not explain *why* the USPS is *not* a *delivery service*; he simply asserts that it is not. Irrespective of this argument, Appellant misinterprets the intent of Section 31.20. As we have explained, nothing in the text of Section 31.20 reasonably excludes the USPS from its scope—it is undoubtedly a delivery service within the common, ordinary meaning of that phrase.

We have reviewed the evidence in the light most favorable to the trial court's verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia*, 667 S.W.3d at 761; *Isassi*, 330 S.W.3d at 638. Because Section 31.20 criminalizes the theft of United States mail as it is defined in Section 31.20 and because Appellant does not dispute on appeal that he stole United States mail in this

instance from Martinez's premises, we conclude that the record contains sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed mail theft under Section 31.20 as charged in the information. Accordingly, we overrule Appellant's sole issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


March 7, 2024

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.