**Opinion issued June 22, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-22-00342-CR**

———————————

**RICHARD NORMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1645524**

**MEMORANDUM OPINION**

Appellant Richard Norman was charged with aggravated sexual assault of the complainant, T.S.[1]  A jury found Norman guilty and sentenced him to 60 years in prison.

---

[1]   *See* TEX. PENAL CODE § 22.021.

In his sole issue, Norman contends that the erroneous inclusion of an uncharged element in the jury charge, which he did not object to in the trial court, caused him egregious harm requiring a new trial. We disagree and affirm.

## Background

On September 7, 2019, around 9:30 p.m., T.S. was at a bus stop waiting on her bus to take her to her job at the McDonald's in Texas Children's Hospital. T.S. was reading a book on her phone when she noticed a man, who was smoking a cigarette, approach the bus stop. She did not pay much attention to the man, whom she identified in a photo array and later in court as Norman, until he "slid next to [her]" and said, "this is what we fixing to do." At that point, T.S. "realized he had something pressed to [her] side," which she believed was a gun. She started to panic, and Norman said, "[d]on't make no noise . . . or I'll shoot you."

Thinking that Norman may rob her, T.S. offered him the only money in her purse, a dollar, and told him to "take it all." Norman refused and made her walk to a field near the bus stop. Norman told T.S. to put her hands against the gate and turn around. T.S. said she did what he asked because she could "do nothing back to nobody with a gun," and because she was scared: "I don't know if he [was] going to really shoot me or if he's just saying that . . . [but] I'd rather . . . take my chances, Lord, you know, God forbid, dealing with AIDS or something than be dead."

2

Norman unbuckled T.S.'s pants, pulled his pants down, and put his penis into her vagina. After ejaculating inside of T.S., Norman pulled up his pants, handed T.S. her phone and purse that were on the ground, and let her go.

When T.S. walked by a Metro PCS store, she was able to connect to Wi-Fi and call her mother, Sureka Flakes. T.S. was "crying and screaming" and "very frightened." Her mother told her to call the police. When the police arrived, T.S. explained what happened and the police sent her to the hospital for a sexual assault examination. Lisa Dixon, a registered nurse and sexual assault nurse examiner, preformed a sexual assault exam on T.S. During the exam, Dixon collected vaginal swabs from T.S. and included them in a sexual assault kit. Dixon also conducted an examination of T.S.'s genitalia to look for trauma or injuries. Although Dixon found no evidence of injury to T.S., she explained that this was typical because of the vagina's elasticity. She further testified that the lack of injury could be consistent with either consensual sex or sexual assault.

While T.S. was at the hospital, Flakes searched for the man that T.S. said assaulted her. Flakes found a man sleeping at a bus stop that matched T.S.'s description of the man who assaulted her. Flakes called the police, and the police arrested the man, who was identified at trial by Houston Police Department Sergeant R. Mason, one of the arresting officers, and by T.S. as Norman.

3

Sergeant Mason testified that he found an airsoft gun on the ground at the bus stop next to Norman. The airsoft gun, although not a real gun, "looks like a functioning firearm" based on its scale, color, trigger, working slide similar to a semiautomatic handgun, and the absence of typical "orange marking indicating that it's an airsoft gun."

After police compiled a photo array, T.S. identified Norman as the man who sexually assaulted her. Police also collected a buccal swab from Norman for DNA testing. After analyzing Norman's buccal swab and the swabs contained in T.S.'s sexual assault kit, Jessica Powers, a forensic DNA analyst at the Houston Forensic Science Center, could not exclude Norman as a possible contributor to the major components of the DNA on T.S.'s swabs.

### *The Indictment*

In the initial indictment, the State charged him with aggravated sexual assault by exhibiting a deadly weapon. The State later amended the indictment to allege that Norman committed aggravated sexual assault by threat, and Norman did not object to this amendment. The amended indictment read:

> The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas RICHARD C. NORMAN, hereafter styled the Defendant, heretofore on or about September 7, 2019, did then and there unlawfully, intentionally and knowingly cause the penetration of the sexual organ of [T.S.], hereinafter called the Complainant, by placing the Defendant's sexual organ in the sexual organ of the Complainant, without the consent of the Complainant, namely, the Defendant

4

compelled the Complainant to submit and participate by the use of physical force, violence, and coercion, and by acts and words occurring in the presence of the Complainant, the Defendant threatened to cause death or serious bodily injury to the Complainant.

### *The Jury Charge*

After the State and the defense rested, the trial court read the charge to the jury. Norman did not object. The abstract paragraph of the charge included an aggravating element that was not included in the amended indictment. Specifically, the abstract paragraph of the charge stated:

> A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of another person by the sexual organ of the defendant, without that person's consent; and if the person by acts or words *places the victim in fear that serious bodily injury will be imminently inflicted on any person.*

(Emphasis added).

The application paragraph, however, tracked the amended indictment:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 7th day of September, 2019, in Harris County, Texas, the defendant, Richard C. Norman, did then and there unlawfully, intentionally or knowingly cause the penetration of the sexual organ of T.S. by placing the Defendant's sexual organ in the sexual organ of T.S., without the consent of T.S., namely the defendant compelled T.S. to submit or participate by the use of physical force, violence or coercion, and by acts or words occurring in the presence of T.S., the defendant threatened to cause death or serious bodily injury to T.S., then you will find the defendant guilty of aggravated sexual assault, as charged in the indictment.

5

**Charge Error**

In his sole issue, Norman argues that the jury charge erroneously included an uncharged aggravated element and that this error enlarged the jury's ability to convict Norman. resulting in egregious harm and requiring reversal. The State concedes that the inclusion of the uncharged aggravating factor in the abstract portion of the charge was error, but argues the error did not cause egregious harm to Norman because it was cured by the application paragraph of the charge, it did not lower the State's burden of proof, it did not impact Norman's defensive theory, and it did not create a danger that the jury would return a non-unanimous verdict.

**A.    Standard of Review**

Claims of jury charge error are reviewed under the two-pronged test in *Almanza v. State*, 686 S.W.2d 157, 171–74 (Tex. Crim. App. 1985) (op. on reh'g). First, a reviewing court must determine if there is jury charge error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Second, if the reviewing court finds error, it then must analyze that error for harm. *Id.*

If a defendant does not timely object to the error in the jury charge, the record must show "egregious harm." *Almanza*, 686 S.W.2d at 171. An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id.* at 172. A reviewing court must make this determination "in light of the entire jury charge,

6

the state of the evidence, including the contested issues and weight of [the] probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* at 171. Moreover, any determination of egregious harm must be based on "actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

Egregious harm is therefore a difficult standard to meet, and the analysis is a fact-specific one. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). But neither party bears the burden to show harm or lack thereof under this standard. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). Rather, a reviewing court must examine the entire record to determine whether appellant suffered actual egregious harm as a result of the error. *Id.*

## B. Applicable Law

A person commits the offense of aggravated sexual assault if, among other possibilities, the actor (1) intentionally or knowingly (2) causes the penetration of the sexual organ of another person by the actor's sexual organ, (3) without the other person's consent, and one of several aggravating factors is met. TEX. PENAL CODE § 22.021(a)(1)(A)(iii), (2).

Lack of consent is shown with evidence the actor compelled the other person to submit or participate by (1) the use of physical force, violence, or coercion or (2)

threatening to use force or violence against the other person or to cause harm to the other person, and the other person believed that the actor has the present ability to execute the threat. *Id.* § 22.011(b)(1)–(2).

Norman was charged under the first form of lack of consent—force and violence. The list of possible aggravating factor includes if the actor places the victim in fear that death or serious bodily injury will be imminently inflicted on any person, or if the actor threatens to cause death or serious bodily injury to any person. *Id.* § 22.021(a)(2)(A)(ii), (iii). "The jury charge may not enlarge the offense alleged and authorize the jury to convict a defendant on a basis or theory permitted by the jury charge but not alleged in the indictment." *Head v. State*, 299 S.W.3d 414, 439 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

## C. Error

As noted above, the abstract paragraph of the charge recited an aggravating factor that was not included in the indictment, i.e., that by acts or words places the victim in fear that serious bodily injury will be imminently inflicted on any person. The application paragraph, however, tracked the language of the amended indictment and included the correct aggravating factor, i.e., that by acts or words occurring in the presence of T.S., the defendant threatened to cause death or serious bodily injury to T.S.

The parties agree it was error to include the uncharged aggravating factor in the abstract paragraph of the charge. Because the parties agree that this was error, we next consider harm.

## D. Harm Analysis

Norman concedes that he did not object to this error in the charge. When, as occurred here, a defendant fails to object to charge error or states he has no objection to a charge, a reviewing court cannot reverse unless the error was so egregious and created such harm that the defendant cannot be said to have had a fair trial. *Almanza*, 686 S.W.2d at 171. As noted above, we must determine the existence of any such harm from a review of (1) the entire charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information. *Id.*

### 1. The entire jury charge

The first *Almanza* factor requires us to consider the entire jury charge. *Id.* Here, the alleged error occurred within the abstract paragraph of the charge. Abstract paragraphs "serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). In contrast, application paragraphs apply "the pertinent penal law, abstract definitions, and general legal

9

principles to the particular facts and the indictment allegations." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012).

The abstract paragraph of the charge in this case began with the instruction that a "person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of another person by the sexual organ of the defendant, without that person's consent; and if the person by acts or words places the victim in fear that serious bodily injury will be imminently inflicted on any person." *See* TEX. PENAL CODE § 22.021(a)(2)(A)(ii). This instruction misstates the aggravating factor on which Norman was indicted—that by acts and words occurring in the presence of T.S., Norman threatened to cause death or serious bodily injury to T.S. *See id.* § 22.021(a)(2)(A)(iii).

However, this portion of the abstract was not incorporated into the charge's application paragraph. The application paragraph correctly tracked the amended indictment, stating the required elements for the offense, including the aggravating factor that Norman threatened to cause death or serious bodily injury to T.S. Furthermore, at the end of the charge, the jury was instructed that it was their "sole duty . . . to determine the guilt or innocence of the defendant under the indictment in this cause[.]"

10

"It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw*, 378 S.W.3d at 466 ("An abstract charge on a theory of law that is not applied to the facts does not authorize the jury to convict upon that theory."). Because the application paragraph tracked the amended indictment and directed the jury to determine the guilt or innocence "under the indictment," it "restricted the jury's consideration to only those allegations contained in the [indictment]." *Id.* at 467 (stating that jury is presumed to have understood and followed court's charge, absent evidence to the contrary).

Nothing in this record suggests that the jury did not properly apply the application paragraph. Therefore, the charge itself does not point toward finding egregious harm. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious.").[2]

---

[2]    *See also Crenshaw*, 378 S.W.3d at 466 ("Generally, reversible error occurs in the giving of an abstract instruction only when the instruction is an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph."); *Farrar v. State*, No. 01-18-01043-CR, 2020 WL 2069152, at *6 (Tex. App.—Houston [1st Dist.] Apr. 30, 2020, no pet.) (mem. op., not designated for publication) ("When a court's charge correctly states the elements of an offense and a reasonable jury could refer to that portion of the court's charge to mitigate any confusion by an incorrect statement of elements elsewhere in the court's charge, the fact that the charge contains a correct statement of elements reduces the likelihood that harm reaches the level of egregiousness.").

## 2. The state of the evidence

The second *Almanza* factor requires us to review the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm. *Almanza*, 686 S.W.2d at 171; *Arrington v. State*, 451 S.W.3d 834, 841 (Tex. Crim. App. 2015). Norman contends that this factor favors a finding of egregious harm because the testimony at trial emphasized T.S.'s fear more than her feeling threatened. We disagree.

T.S. testified that, after Norman "slid up" next to her, he said: "Don't make no noise . . . or I'll shoot you." She testified that Norman told her to put her hands against the gate and turn around, and that she did what he asked because she could "do nothing back to nobody with a gun," because she was scared: "I don't know if he [was] going to really shoot me or if he's just saying that . . . [but] I'd rather . . . take my chances, Lord, you know, God forbid, dealing with AIDS or something than be dead."

As a result, T.S. followed Norman order to put her hands against the gate. He then unbuckled his pants and penetrated her vagina with his penis. Thus, T.S.'s testimony is clear that she was afraid *because Norman threatened to shoot her if she did not comply*. She did not testify that she was in fear because of anything other than Norman's threat to shoot her. Accordingly, the only theory that the prosecution presented to the jury was that Norman forced T.S. to have non-

consensual sex with him by threatening her with what she believed to be a gun, which caused her to be afraid. The threat and corresponding fear resulting from that threat are inseparable.

Based on the physical and other evidence introduced at trial, including Norman's DNA, T.S.'s identification of Norman in the photo array as the man who assaulted her, Flakes's testimony that she saw Norman, who matched T.S.'s description of the man who assaulted her, sleeping at a bus stop, and that police arrested Norman and discovered an airsoft gun, that "looks like a functioning firearm," next to Norman on the ground, the identity of the person who had sex with T.S. was not seriously contested by Norman.

Rather, Norman's counsel presented his theory of the case, i.e., that the sexual encounter between T.S. and Norman was consensual. Norman's counsel disputed T.S.'s credibility, pointing out inconsistencies in her statements, and focused on the fact that the physical evidence supported his consent theory as equally as it did T.S.'s version of a sexual assault. In closing argument, Norman's counsel explicitly argued that T.S. "voluntarily had sex with [Norman]," and that the evidence "strong[ly] support[ed]" that this was a consensual act.

Thus, the jury heard two opposite theories. Under the prosecution's theory, Norman threatened to shoot T.S., and thus placed her in fear that she would be shot if she did not comply, and then sexually assaulted her at gun point. Under the

13

defense's theory, T.S. consented to the sexual encounter and later lied about being threatened and sexually assaulted at gun point. These were the only two theories presented to the jury.

The jury evaluated the evidence and chose one theory while rejecting the other. This case does not reasonably involve the possibility that the jury believed Norman placed T.S. in fear of serious bodily harm but did not threaten T.S. with death or serious bodily harm in the process.[3] The evidence simply did not provide for that possibility. *Arrington*, 451 S.W.3d at 843–44 (holding that state of evidence factor weighed against finding of egregious harm because jury clearly credited complainant's story and did not believe defendant's "categorical denial of all accusations," since had jury believed defendant rather than complainant, it would have acquitted him of all charges).[4]

We conclude this factor also weighs against finding egregious harm.

---

[3] We disagree with Norman that the jury's note sent out during deliberations— "[w]e are having a difficult time coming to a consensus"—necessarily means that the jury "found conflict as to the aggravating factor." There is nothing in the jury's note to indicate that they could not reach a consensus on the aggravating factor. Considering the state of the evidence, and the two competing theories presented, it is more likely that the jury had a "difficult time coming to a consensus" on whether the encounter was consensual.

[4] *Farrar*, 2020 WL 2069152, at *7 (holding no egregious harm from erroneous use of "or" instead of "and" in application paragraph of charge, in part, because jury was presented with only two versions of events, either defendant forced complainant to have sex with him at gunpoint or complainant consented to sex under expectation that she would be paid, became angry when she was not paid as expected, and wrongfully accused defendant of sexual assault).

### 3. Arguments of counsel

The third *Almanza* factor requires us to consider the arguments of counsel. *Almanza*, 686 S.W.2d at 171. This factor weighs only slightly in favor of egregious harm. The arguments of the parties created some potential that the jury could have considered an uncharged aggravating factor. Norman's counsel addressed both aggravating factors, fear and threat, in his closing argument. He asked the jury: "Did you hear about a gun still being pointed at her? No. Did you hear about any threatening words from him after the sex act? No."

The State concedes that the prosecutor mentioned the erroneous aggravating factor during closing argument. In discussing how the case was pled, the prosecutor incorrectly stated:

> You've heard some testimony that this is not a real gun. We're not contending that it is. It doesn't change the indictment at all, how the case is pled. It's pled "acts and words placing her in fear of serious bodily injury or death," and that's exactly what she was.

However, the thrust of the prosecutor's closing argument focused on rebutting the defense's theory of consent by focusing on the evidence that Norman forced T.S. to comply by threatening her with what she believed was a gun. In doing so, the prosecutor argued,

> He walks her with the gun trained on her back, that little bit of distance back behind the bus. And he has her place her hands against that wooden fence, and she realizes when he starts to unbutton her pants exactly what's about to happen.

15

> At that point you heard her say, How are you going to fight a guy who has a gun. How are you supposed to fight him? No. She goes into survival mode. She does whatever it takes at that point to survive not being shot by this man, who she doesn't know, about to rape her.

The prosecutor then challenged Norman's theory of consent, arguing that if this was a consensual act, why did T.S. call her mother hysterical and say she was raped, why did she call the police, why did she submit to an invasive sexual assault examination, and "most importantly, . . . if this was a consensual act, why did Richard Norman need this gun?" Thus, that this was a consensual act was the defensive theory that the State primarily contested during closing arguments.

Although the parties' closing arguments may have created a potential for harm by addressing the uncharged aggravating factor, whether T.S. was placed in fear versus threatened was incidental to the highly contested defensive theory of consent, which was the primary focus of the parties' closing arguments. Accordingly, we impute less weight to this factor because the effect was incidental. *Cf. Hutch v. State*, 922 S.W.2d 166, 172–73 (Tex. Crim. App. 1996), *overruled on other grounds by Gelinas v. State*, 398 S.W.3d 703, 706–08 (Tex. Crim. App. 2013) (stating that when error relates to incidental defensive theory rather than obviously contested issue, harm is less likely to be egregious).[5]

---

[5] *See also Hines v. State*, 535 S.W.3d 102, 113–14 (Tex. App.—Eastland 2017, pet. ref'd) (imputing less weight to arguments of counsel, even though parties' closing argument created potential for harm by referencing unauthorized theories of liability, because those unauthorized theories were incidental to State's case).

## 4. Any other relevant information

Finally, the fourth *Almanza* factor requires us to consider any other relevant information. *Almanza*, 686 S.W.2d at 171. This factor weighs against finding egregious harm. The jury heard the correct elements of the offense, as charged in the amended indictment, from the trial court during voir dire. The trial court explained the aggravating factor as "by acts and words that threaten to cause the death and serious bodily injury to the Complainant. That's what make[s] it aggravated." The trial court later reiterated that the charged offense was "aggravated sexual assault, meaning forcing someone by threats to have sex, basically, through threats of violence."

The State also read the amended indictment during voir dire, and after the jury was empaneled, during the arraignment. Each time the amended indictment was read, the jury heard all elements of the offense, including the correct aggravating factor that Norman threatened to cause death or serious bodily injury to T.S.

## 5. Egregious harm not established on this record

A review for egregious harm is fact intensive and determined on a case-by-case basis. *Taylor*, 332 S.W.3d at 489. In this case, the amended indictment was read to the jury twice, once during voir dire and once during arraignment, and it correctly listed all necessary elements for a conviction for aggravated sexual

17

assault, including the correct aggravating factor. Likewise, the application paragraph of the trial court's charge correctly listed all necessary elements for a conviction of aggravated sexual assault, as were alleged in the amended indictment. In the abstract paragraph, though, the charge included an uncharged aggravating factor—placing the victim in fear of serious bodily harm.

But the jury was presented with an all-or-nothing defensive theory of the case that excluded the possibility of any middle ground. There were only two possible outcomes: either the jury was going to believe T.S.'s version of events that Norman sexually assaulted her, after he threatened to shoot her with the gun and that she complied because she was afraid, or the jury was going to believe Norman's version that the sex was consensual.

There is no reasonable possibility that the jury would have resolved all the facts presented to conclude that Norman forced T.S. to engage in sex without her consent, but that he did so only by placing T.S. in fear of serious bodily injury and not by "acts or words . . . threaten[ing] to cause death or serious bodily injury to T.S." The testimony was clear that T.S. was afraid because Norman threatened to shoot her if she did not comply. The jury ultimately believed T.S. because it rejected Norman's theory that the sexual encounter was consensual and found him guilty.

Accordingly, based on our review of the entire record, we conclude that the error of including an uncharged aggravating factor in the abstract portion of the jury charge did not result in egregious harm to Norman. The error did not affect the very basis of the case, deprive Norman of a valuable right, or vitally affect a defensive theory. *See Uddin v. State*, 503 S.W.3d 710, 715 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006) ("Charge error is egregiously harmful when it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.")).

## Conclusion

We therefore affirm the trial court's judgment of conviction in all things.


Terry Adams
Chief Justice


Panel consists of Chief Justice Adams and Justices Guerra and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).

19